IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **LAW SCHOOL ADMISSION COUNCIL, INC.** | : | **CIVIL ACTION** |
| | : | |
| | : | |
| v. | : | |
| | : | **NO. 15-5219** |
| **MORLEY TATRO** | : | |

**KEARNEY, J.**                                                           **December 29, 2015**

### MEMORANDUM

The parties, centrally involved in the rite of passage for lawyers known as the Law School Admission Test, posit a federal jurisdiction and venue question with an overlay of deference to a prior filed action between them. Our study confirms we must first ascertain personal jurisdiction and venue, and then consider venue transfer based on a prior filed pending action.    After testing applicable principles, we exercise personal jurisdiction over Defendant and find venue appropriate.    But because Defendant here first filed an action in California against the Plaintiff before it plead counterclaims here, we will exercise our discretion under 28 U.S.C. §1404 and transfer this matter to become part of the prior pending related case before the Honorable R. Gary Klausner at C.A. No. 15-7627 in the United States District Court for the Central District of California.

## I.    FACTS RELATING TO JURISDICTION AND VENUE

Plaintiff Law School Admission Council, Inc. ("LSAC") is a Delaware non-profit entity situated in this District providing admission-related services to law schools and potential students.[1]  LSAC prepares and administers the Law School Admission Test ("LSAT").[2]   It owns

all copyrights for each of the LSAT tests it creates each year.[3]  The copyrighted material includes not only the exam questions but the instructions, answers, answer keys, and materials.[4]   LSAC incurs significant costs related to the creation of these materials and to offset the costs grants royalty-bearing licenses to test-preparation companies.[5]   These licenses permit test-prep companies to reproduce certain copyrighted LSAT materials for use in their preparation courses and offer future test takers with access to actual LSAT questions used in previous exams.[6]

Defendant Morley Tatro ("Tatro"), the owner of Cambridge LSAT, an unincorporated sole proprietorship in California, holds a license from LSAC.[7]   Tatro provides preparation materials for students taking the LSAT.[8]   He maintains a website at www.cambridgelsat.com making test preparation materials available nationwide.[9]  These materials include workbooks and compilations of LSAT test questions.[10]  Tatro's website provides the LSAT materials in a format which allows unauthorized users to download, forward, open, and print any number of times.[11]

Beginning in 2009, LSAC and Tartro entered licensing agreements authorizing Tatro, through Cambridge LSAT, to use, print, reproduce, and distribute certain LSAT materials subject to various conditions.[12]   The parties signed their most recent licensing agreement on June 15, 2015 (the "Agreement").[13]   The Agreement covered the period from January 2015 through June 30, 2017, with licensing fees due by Cambridge LSAT in January 2016.[14]  On August 4, 2015, LSAC terminated the Agreement and cancelled the licenses effective August 15, 2015.[15]

After terminating the Agreement and receiving Tatro's opposition to the termination, the parties attempted to negotiate a resolution.[16]   On August 15, 2015, Tatro offered to cease distributing LSAC's materials on his website in exchange for "mutual general releases."[17]  LSAC responded on August 19, 2015, stating it would be interested in the terminating the relationship

2

provided they could "agree upon an appropriate release."[18] The parties have not addressed their resolution efforts after August 19, 2015.

On August 31, 2015, Tatro filed suit against LSAC in the Superior Court of the State of California (the "California Action").[19] LSAC removed the California Action to the United States District Court for the Central District of California on September 29, 2015.[20] In the California Action, Tatro alleged LSAC breached its contract and the implied covenant of good faith and fair dealing with Tatro, and sought declaratory relief challenging LSAC's purported breach of the Agreement.[21] The Honorable R. Gary Klausner dismissed Tatro's Complaint in its entirety with leave to amend only his claim alleging LSAC breached the Agreement by failing to give Tatro thirty (30) days to cure any breach.[22]

On September 18, 2015, before removal of the California Action, LSAC filed the instant action in this District.[23] LSAC asserts one count of copyright infringement encompassing multiple infringing products and one count of contributory copyright infringement.[24]

## II.   ANALYSIS

Following our grant of jurisdictional discovery[25], we review Tatro's motion to dismiss arguing: we cannot exercise personal jurisdiction because he has "never been a resident of the State of Pennsylvania, and [he has] not established minimum contacts with Pennsylvania . . . ."[26]; and, as he is not subject to personal jurisdiction in this District, venue is improper and the case should be dismissed, or in the alternative transferred to the Central District of California.[27]

After learning of the California Action before Judge Klausner during our initial pretrial conference, the Court requested the parties brief the "first-filed" rule, as well as provide the Court with a transfer of venue analysis under 28 U.S.C. §§ 1404, 1406 as analyzed in our Court of Appeals' opinion in *Jumara v. State Farm Insurance Co.*, 55 F.3d 873 (1995).

### A.     This Court has personal jurisdiction over Tatro.

When a defendant raises the defense of personal jurisdiction, the plaintiff bears the burden of a *prima facie* showing of appropriate jurisdiction.[28]   Plaintiff must establish "with reasonable particularity sufficient contacts between the defendant and the forum state."[29]   A "plaintiff is entitled to have its allegations taken as true and all factual disputes drawn in its favor."[30]   A plaintiff, however, must support his allegations with affidavits or other competent evidence and may not simply rely on his pleadings.[31]

A federal court may exercise personal jurisdiction "according to the law of the state where it sits."[32]   "First, the court must apply the relevant long-arm statute to see if it permits the exercise of personal jurisdiction; then the court must apply the precepts of the Due Process Clause of the Constitution."[33]   Pennsylvania's long arm statute reaches to the "fullest extent allowed under the Constitution of the United States."[34]   "A district court's exercise of personal jurisdiction pursuant to Pennsylvania's long arm statute is therefore valid as long as it is constitutional."[35]   The inquiry then becomes whether under the Due Process Clause, Tatro has "sufficient minimum contacts with [Pennsylvania] such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice."[36]

We may exercise either general or specific general jurisdiction.[37]   LSAC does not argue Tatro is subject to this Court's general jurisdiction and thus we need only consider whether we may exercise specific jurisdiction.   Specific jurisdiction exists when "the basis of 'plaintiff's claim is related to or arises out of the defendant's contacts.'"[38]   Accordingly, our analysis must focus on the "the relationship among the defendant, the forum, and the litigation."[39]   To do so a court engages in a "three-part inquiry."[40]   We must first determine whether the defendant "purposefully directed his activities" at the forum.[41]   Second, the litigation must "arise out of or

4

relate to" those activities.[42]   Finally, only if the first two requirements are met will we consider

whether the exercise of specific jurisdiction comports with "traditional notions of fair play and

substantial justice."[43]   Our determination of specific personal jurisdiction over a defendant is

claim-specific.[44]

LSAC primarily asserts specific jurisdiction based on Tatro's maintenance of a website

through which he purposefully directed his activities towards Pennsylvania:[45]

> (1) Defendant owns and controls the Cambridge LSAT Website; (2) the
> Cambridge LSAT Website makes LSAT Materials available to Pennsylvania
> residents; (3) Pennsylvania residents have purchased LSAT Materials through the
> Cambridge LSAT Website, which Defendant controls; (4) Defendant has derived
> revenue from his sales of LSAT Materials in Pennsylvania via his website; and
> (5) Defendant obtained the infringing materials he now sells on his website by
> soliciting and obtaining them from LSAC in Pennsylvania. [46]

LSAC argues these contacts are sufficient evidence of purposeful availment by Tatro such that

he could reasonably expect to be haled into a Pennsylvania court.

When specific personal jurisdiction is based on contacts made through a defendant's

website, the seminal case of *Zippo Manufacturing Co. v. Zippo Dot Com, Inc.*[47], guides our

analysis. *Zippo* requires an inquiry into where on a "sliding scale of commercial interactivity"

the web site exists[48]:

> At one end of the spectrum are situations where a defendant clearly does business
> over the Internet.  If the defendant enters into contracts with residents of a foreign
> jurisdiction that involve knowing and repeated transmission of computer files
> over the Internet, personal jurisdiction is proper.   At the opposite end are
> situations where a defendant has simply posted information on an Internet Web
> site which is accessible to users in foreign jurisdictions.  A passive website does
> little more than make information available to those who are interested in it is not
> grounds for the exercise of personal jurisdiction. [49]

We must determine whether Tatro, through his website, "clearly does business over the

Internet" with Pennsylvania residents.  Based on the affidavits and accompanying exhibits filed

after jurisdictional discovery, we find Tatro purposefully availed himself of the right to do

business in Pennsylvania and we may properly exercise specific personal jurisdiction over him. Tatro's website falls closer to the interactive end of the *Zippo* spectrum than the passive end. The screenshots submitted by LSAC evidence a website where visitors can search for various resources: "PrepTests", "Problem Sets", "Explanations", "Prep Books", "Study Advice", "Tutors", and more.[50]  In addition, visitors have the opportunity to purchase all of these resources directly through the website.[51]  The various functions of the website indicate its interactive nature.[52]

Not only does the evidence establish the interactive nature of the website, but also its "intentional interaction with the forum state."[53]  "[T]here must be some evidence that the defendant 'purposefully availed' itself of conducting activity in the forum state, by directly targeting its website to the state, knowingly interacting with residents of the forum state via its website, or through sufficient other related contacts."[54]  The exhibits to the Gorman Declaration indicate numerous purchases on the website from Pennsylvania residents, a large majority of whom are residents of this District.[55]  From 2009 to 2015, Pennsylvania residents made approximately two hundred and fifty (250) purchases on Tatro's website.[56]  Residents of this District made approximately seventy percent (70%) of the purchases.[57]  We find this volume of sales to be sufficient to warrant the exercise of personal jurisdiction as Tatro continued to process Pennsylvania residents' purchases.[58]  These cannot be considered "fortuitous" or "isolated" contacts but rather direct evidence of a "conscious choice to conduct business with the residents of [Pennsylvania]."[59]  As Tatro chose to interact with Pennsylvania residents, he cannot now seek to shield himself from a Pennsylvania court.[60]

Moreover, we find LSAC's copyright cause of action arises out of Tatro's forum-related conduct.  LSAC alleges copyright infringement of the very materials Tatro made available to the

Pennsylvania purchasers on his website.[61]    Tatro chose to do business with Pennsylvania residents through his website.  He is now subject to personal jurisdiction here so long as it comports with the Due Process clause.

We examine whether exercising specific personal jurisdiction over Tatro    "comport[s] with fair play and substantial justice."[62]    We consider "the burden on the defendant, the forum State's interest in adjudicating the dispute, the plaintiff's interest in obtaining the most efficient resolution of controversies, and the shared interest of the several States in furthering fundamental substantive social policies."[63]    "The existence of minimum contacts makes jurisdiction presumptively constitutional, and the defendant 'must create a compelling case that the presence of some other considerations would render jurisdiction unreasonable."[64]

Tatro contends defending this action in Pennsylvania "would impose [on him] an undue hardship."[65]    He argues he is the primary earner in his family and having to litigate and represent himself in Pennsylvania is unfair.[66]    He contends "LSAC has already hired a national law firm to act on its behalf and can conveniently conduct its activities outside its primary state of business."[67]    Finally, Tatro argues he would be "unduly inconvenienced by out-of-state depositions" to the extent LSAC wishes to take his deposition.[68]

We recognize the potential burden placed on a defendant having to litigate across the country.  We cannot find Tatro met his burden in providing a "compelling case" for declining jurisdiction.  Tatro retained counsel mooting his concern of representing himself.  To the extent LSAC seeks to depose Tatro here, he could move for a protective order under Fed.R.Civ.P. 26(c).  While LSAC hired a large, well-resourced law firm to prosecute this action and is capable of litigating outside of this forum, "modern transportation and communications have made it much less burdensome for a party sued to defend himself in a State where he engages in

7

economic activity."[69]   Moreover, Pennsylvania has a strong interest in protecting copyrights created and owned by its citizens in addition to its interest in protecting its citizens from purchasing infringing materials.   Our role is not to determine the best forum but only a reasonable forum and because Tatro purposefully availed himself of the ability to conduct business in this District, we find our exercise of personal jurisdiction comports with  fair play and substantial justice.[70]   Accordingly, we may properly exercise specific personal jurisdiction over Tatro.

### B.    Venue is proper.

In this copyright infringement case, venue is governed by 28 U.S.C. § 1400(a): "[c]ivil actions, suits, or proceedings arising under any Act of Congress relating to copyrights or exclusive rights in mask works or designs may be instituted in the district in which the defendant or his agent resides or may be found." A defendant in a copyright action "may be found wherever the defendant is subject to personal jurisdiction . . . ."[71]   "Furthermore, venue in a copyright action is proper in any judicial district in which the defendant would be amenable to personal jurisdiction if the district were a separate state."[72]

As detailed above, Tatro engaged interactively with forum residents through his website.  Pennsylvanians made approximately two hundred and forty eight (248) purchases on Tatro's website from 2009 to date.[73]   Tatro made one-hundred and seventy-two (172) sales to residents in the Eastern District of Pennsylvania.[74]   As Tatro "may be found" here, venue is proper in this District under § 1400(a).

### C.    Application of the first-filed rule.

Our Court of Appeals has adopted the "first-filed rule" providing "[i]n all cases of federal concurrent jurisdiction, the court which first has possession of the subject must decide it."[75]   The

rule "encourages sound judicial administration and promotes comity among federal courts of equal rank."[76]   While application of the rule is the norm, its application "is not a mandate directing wooden application of the rule without regard to rare or extraordinary circumstances, inequitable conduct, bad faith, or forum shopping."[77]

LSAC argues we should disregard the California Action as the first-filed and retain jurisdiction over the present action because: the California Action is an improper anticipatory filing by Tatro simply to avoid litigating in Pennsylvania[78];   we need not defer to the California Action because Judge Klausner dismissed Tatro's original complaint in its entirety, albeit with leave to amend one count[79]; and, resolution of the California Action "would still leave material issues" regarding Tatro's alleged copyright infringement.[80]

### i.   *Does the first-filed rule apply?*

There is disagreement among courts within this Circuit as to how "related" cases must be for the first-filed rule to apply.[81]   "Some courts have adopted a narrow approach to the first-filed rule, requiring practically identical claims between identical parties arising from identical circumstances for the rule to apply."[82]   These courts reach this conclusion by relying on language in our Court of Appeals' decision in *Grider v. Keystone Health Plan Ctr.*[83]   In a footnote, while noting the first-filed rule had no application to the circumstances of the particular case, the court of appeals noted the "later-filed case must be truly duplicative" and "materially on all fours with the other" such that "a determination in one action leaves little or nothing to be determined in the other."[84]   These pronouncements are dicta, unnecessary to the outcome in that case and not binding on lower courts.[85]

On the other hand are courts who adopt a more flexible approach in determining whether the two cases are related for purposes of the first-filed rule.[86]   These cases held "the cases need

9

not necessarily be identical for the first-filed rule to apply."[87]   Rather, the critical inquiry is the subject matter at issue in both cases.[88]   Thus, where there is a "substantial overlap" of subject matter, the first-filed rule is properly applied.[89]

We find the flexible approach to more fully meet the purposes of the first-filed rule. Restricting the rule to identical or nearly identical claims invites overly creative lawyering on plead defenses in the first filed suit.   Talented lawyers could simply ignore obligations under Federal Rules of Civil Procedure 7, 8 and 12 in the first filed action and file a second case with their defenses and counterclaim in a more convenient forum.   When the subject matter overlaps, the defendant in the first filed suit could forum or judge shop.   Judges in two dockets may need to coordinate affirmative claims in each case which may be defenses in the other.   We are directed to administer the civil rules to "secure the just, speedy, and inexpensive determination of every action and proceeding."[90]

We accordingly examine the subject matter of the California Action and the present suit. The California Action has one remaining claim seeking a declaratory judgment LSAC breached the Agreement by terminating it without a 30-day cure period.   We are faced here with two counts of copyright infringement against Tatro.   At the most basic level, these two suits both revolve around the business relationship between Tatro and LSAC including the scope of and duties under the Agreement.   This Court may be called on to interpret the Agreement to determine whether Tatro breached it by selling copyright protected materials or whether the Agreement allowed him to do so.   It is entirely possible both courts could be called upon to interpret the Agreement, albeit possibly different sections.   Moreover, it is eminently reasonable to believe one of Tatro's defenses to this lawsuit will be he did not breach the Agreement and his

license is valid.  If so, "sound judicial administration" is furthered by application of the first-filed rule to allow one court to preside over this subject matter.[91]  The first-filed rule applies.

> ### ii.  Did Tatro engage in bad faith and forum shopping by filing the California Action?

According to LSAC, the parties were engaged in settlement negotiations regarding certain claims surrounding Tatro's use of its copyrighted materials when Tatro filed the California Action.[92]  LSAC points to Tatro's allegations in the California Action's original complaint wherein he alleges LSAC "repeatedly and wrongfully threatened to take legal action against [Tatro] in Pennsylvania . . . intends to proceed with pursuing legal action against Tatro in the state of Pennsylvania alleging copyright infringement", and "stated its intention to sue [Tatro] in Pennsylvania."[93]  LSAC believes this evinces Tatro's desire to engage in "procedural gamesmanship" and "classic forum shopping or forum avoidance."[94]

With regard to Tatro's alleged anticipatory filing, we find insufficient evidence of bad faith or forum shopping to warrant a departure from the first-filed rule.  LSAC cited authorities are factually distinguishable.  In *FMC Corp. v. AMVAC Chemical Corp.*, during the course of negotiations, FMC sent a cease-and-desist letter demanding AMVAC respond to the letter within five (5) days or face a lawsuit.[95]  AMVAC did not respond but rather filed its own lawsuit against FMC in the Central District of California on the fourth day.[96]  Instead of serving the complaint on the attorneys with whom it was negotiating, AMVAC served FMC's registered agent in Delaware which lead to FMC and its attorneys not learning of the lawsuit until June 1, 2005 at 10:00 p.m.[97]  Having not received a response to its letter, and with no knowledge of AMVAC's filing, FMC initiated suit in this District on June 1, 2005 prior to learning of AMVAC's suit.[98]  The Honorable Gene E.K. Pratter eschewed application of the first-filed rule because AMVAC filed suit prior to the deadline for its response during negotiations.[99]  Further,

11

Judge Pratter found it reasonable to believe AMVAC attempted to avoid an unfavorable Eastern District of Pennsylvania opinion with "significant similarities" to the two cases.[100]

Similarly, in *PPL Energy Servs. Holdings, Inc. v. Zoot Props., LLC*, now Chief Judge Tucker refused to apply the first-filed rule on the basis of the forum shopping exception.[101] There, the parties entered into an agreement for the design and purchase of molten carbonate fuel cells used to power electrical systems.[102]   PPL provided Zoot Properties with a loan to cover the balance of the purchase price.[103]   The parties became involved in a dispute which they attempted to resolve and then entered into a tolling agreement.[104]   When the parties reached an impasse, the defendant here filed suit in the District of Montana seeking rescission of the agreement.[105]   PPL then filed two actions, including a confession of judgment, in the Court of Common Pleas of Lehigh County, which were both removed to this District.[106]   Judge Tucker found Zoot Properties' suit in Montana "the exact type of blatant forum shopping that the Court of Appeals sought to prevent in *EEOC*" because Montana law does not recognize confessed judgments.[107]

These cases illustrate bad faith anticipatory filings and forum shopping.   A party filing before a deadline for good faith negotiations expires and in the face of an imminent law suit evidences bad faith and an anticipatory filing.[108]   Filing in a forum which provides a distinct legal advantage also indicates forum shopping.[109]   Here, we do not find similar circumstances. We have no evidence Tatro filed the California Action "in anticipation of impending litigation and motivated *solely* by considerations of forum shopping."[110]

We find a more apt analysis offered by Judge Surrick in *Keating Fibre Intern., Inc. v. Weyerhauser Co., Inc*, where the parties to an oral agreement were negotiating an end to their relationship after difficulties arose.[111]   At a meeting between executives of the parties, Keating advised Weyerhauser of the basis on which the dispute could be resolved and stated if the parties

failed to resolve the dispute, Keating would sue.[112]   The next day Weyerhauser filed a declaratory judgment action in the Western District of Washington seeking a declaration of its rights under the oral agreement.[113]   Two weeks later Keating filed its suit in this District asserting various state law claims.[114]   Keating sought to avoid the first-filed rule by arguing Weyerhauser engaged in bad faith by filing its suit one day after Keating threatened to sue and motivated solely by improper forum shopping.[115] Judge Surrick disagreed and applied the first-filed rule finding no evidence of bad faith or forum shopping.[116] Judge Surrick determined the absence of a deadline for responding to Keating's offer distinguished it from other cases finding bad faith.[117]   Judge Surrick found no evidence filing in the Western District of Washington afforded Weyerhauser any favorable legal position "by virtue of practice or precedent." Weyerhauser's headquarters were also located in Washington, which provided "legitimate reasons for filing in that district."[118]

We find Tatro's conduct more similar to *Keating* than *FMC* and *PPL Energy*.  In the latter cases, the first-filer engaged in conduct which could only be described as bad faith and forum shopping.  In *FMC* the first-filer filed suit prior to the expiration of a deadline to negotiate in good faith and compounded its error by failing to serve the attorneys it knew were representing the adverse party.  In *PPL Energy*, the first-filer attempted to take advantage of legally favorable law in the district where it filed establishing forum shopping conduct.  On the contrary, while litigation between Tatro and LSAC may have been "in the air", we have no evidence of a negotiating deadline.[119] There is no evidence of any deadline by which Tatro had to respond or face imminent suit.  Absent compelling circumstances such as a deadline, negotiations do not in and of themselves erode a party's right to file suit.  Further, there is no evidence California law provides Tatro with any more favorable legal standing for choice of law

on the contract claim and does not affect federal copyright law.  Having filed in his home California, Judge Klausner's court is more convenient for him.[120]   We cannot find bad faith or forum shopping motivated Tatro.

### iii.    Has this action developed further than the California Action?

Finally, "courts often look to the status of the second-filed action to determine whether departure from the first-filed rule would better satisfy the rule's equitable goals."[121]   However, departure from the rule under these circumstances is still in our discretion.[122]   Evaluating the totality of the circumstances, we find this case has not developed further than the California Action to warrant a departure from the first-filed rule.  In the California Action, Judge Klausner is now reviewing an Amended Complaint containing one count for a declaratory judgment having already decided one earlier motion to dismiss.  LSAC moved to dismiss the Amended Complaint and advises Judge Klausner will hold an initial pretrial conference on January 25, 2016.[123]   By contrast, we found personal jurisdiction over Tatro and the parties commenced core written discovery after our November 5, 2015 Scheduling Order.[124]   We have set a discovery deadline of February 5, 2016, thus facilitating prompt Rule 56 motions and a trial, if necessary, in May 2016.[125]   Thus, one case has not necessarily developed further than the other.  In both cases, the defendants have not answered.  The parties have begun core party written discovery in this matter which can only benefit them in the California Action.  Finally, Judge Klausner efficiently decided the prior motion to dismiss after the LSAC's reply brief and we have no reason to believe the pending motion will not be dealt decided just as efficiently.  Accordingly, we do not find "compelling circumstances" to warrant a departure from the first-filed rule.

### D.     Transfer of this action is appropriate to the Central District of California.

"Once it is determined that the first-filed rule applies, and no exceptions counsel against its application, the court must determine an appropriate remedy."[126]   One remedy is to dismiss the case without prejudice or to stay the case for the duration of the first filed action.[127] Alternatively, the case may be transferred to the district where the first-filed action is pending, consistent with the requirements of 28 U.S.C. § 1404(a) and *Jumara*.[128]

"[C]ourts in our district have held that where there is a strong likelihood of consolidation with a related action, a transfer of venue is warranted."[129]   This is so even when the transfer "conflicts with plaintiff's choice of forum."[130]   Considering the *Jumara* public and private factors, we find most of them to be neutral and do not warrant this Court retaining the action. The factor most in favor of retaining jurisdiction here is the majority of witnesses are LSAC employees located in this District.   However, "party witnesses are presumed to be willing to testify in either forum despite any inconvenience."[131]   Having found the cases involve sufficiently similar subject matter to warrant application of the first-filed rule, we find transfer to the venue of the prior pending action before Judge Klausner in the Central District of California serves the purposes of Federal Rule of Civil Procedure 1 and is in the interest of justice.

### III.     CONCLUSION

While we may exercise specific personal jurisdiction over Tatro and this District is one of at least two appropriate venues, we find resolving claims and counterclaims in one prior pending action, rather than two different district courts, serves the interests of justice.   We transfer this action to the Central District of California in the accompanying Order.

---

[1] (ECF Doc. No. 1, at ¶¶ 1, 6.)

[2] (*Id.*)

[3] (*Id.* at ¶ 7.)

[4] (*Id.*)

[5] (*Id.* at ¶ 10.)

[6] (*Id.* at ¶ 10.)

[7] (ECF Doc. No. 1, at ¶ 2; ECF Doc. No. 9, at 6.)

[8] (ECF Doc. No. 1, at ¶ 2.)

[9] (*Id.* at ¶ 16.)

[10] (*Id.* at ¶ 17.)

[11] (*Id.* at ¶ 18.)

[12] (*Id.* at ¶ 11.)

[13] (*Id.*)

[14] (*Id.*)

[15] (*Id.* at ¶ 12.)

[16] (ECF Doc. No. 24-1, Ex.13, at ¶ 7.)

[17] (*Id.*, Ex. 12.)

[18] (*Id.*)

[19] (*Id.*)

[20] (*Id.* at Ex. 14.)

[21] (*Id.*)

---

[22] (*Id.*)

[23] (ECF Doc. No. 1)

[24] (*Id.* at ¶¶ 24-39.)

[25] (ECF Doc. No. 13)

[26] (ECF Doc. No. 9, at 5.)

[27] (*Id.*)

[28] *See Miller Yacht Sales, Inc. v. Smith*, 384 F.3d 93, 97 (3d Cir. 2004) (citing *Pinker v. Roche Holdings Ltd.*, 292 F.3d 361, 368 (3d Cir. 2002)).

[29] *Mellon Bank (East) PSFS, National Association v. Farino*, 960 F.2d 1217, 1221 (3d Cir.1992) (citation omitted).

[30] *Miller Yacht Sales*, 384 F.3d at 97 (citing *Pinker*, 292 F.3d at 368).

[31] *See Dayhoff Inc. v. H.J. Heinz Co.*, 86 F.3d 1287, 1302 (3d Cir. 1996).

[32] *O'Connor v. Sandy Lane Hotel, Ltd.*, 496 F.3d 312, 316 (3d Cir. 2007).

[33] *IMO Indus., Inc v. Kiekart AG*, 155 F.3d 254, 259 (3d Cir. 1998).

[34] 42 Pa. Cons. Stat. § 5322(b).

[35] *Pennzoil Prods Co. v. Colelli & Assocs., Inc.*, 149 F.3d 197, 200 (3d Cir. 1998) (citing *Farino*, 960 F.2d at 1221).

[36] *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945) (internal quotations omitted).

[37] *See Helicopteros Nacionales de Columbia v. Hall*, 466 U.S. 408, 414-16 (1984).

[38] *Bragg v. Linden Research, Inc.*, 487 F. Supp. 2d 593, 597 (E.D. Pa. 2007) (citing *Pennzoil*, 149 F.3d at 201).

[39] *Rush v. Savchuk*, 444 U.S. 320, 327 (1980) (quoting *Shaffer v. Heitner*, 433 U.S. 186, 204 (1977)).

[40] *See D'Jamoos ex rel. Estate of Weingeroff v. Pilatus Aircraft Ltd.*, 566 F.3d 94, 102 (3d Cir. 2009).

[41] *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472 (1984) (internal quotations omitted).

[42] *Helicopteros*, 466 U.S. at 408.

[43] *Int'l Shoe*, 326 U.S. at 316.

[44] *Remick v. Manfredy,* 238 F.3d 248, 255 (3d Cir.2001).

[45] (ECF Doc. No. 24, at 6-8.)

[46] (*Id.* at 6.)

[47] 952 F. Supp. 1119 (W.D. Pa. 1997)

[48] *Toys "R" Us, Inc. v. Step Two, S.A.*, 318 F.3d 446, 452 (3d Cir. 2003) (adopting the *Zippo* analysis).

[49] *Zippo*, 952 F. Supp. at 1124 (internal citation omitted).

[50] (ECF Doc. No. 24-1, Ex. 6)

[51] (*Id.*)

[52] *See R.Q.C. Ltd. v. JKM Enters., Inc.*, No. 13-307, 2014 WL 4792148, *5 (W.D. Pa. Sept. 23, 2014).

[53] *Toys "R" Us*, 318 F.3d at 451-52.

[54] *Id.* at 454.

[55] (ECF Doc. No. 24-1, Exs. 2-4.)

[56] (*Id.*)

[57] Of the approximately 248 sales made to Pennsylvania residents, 172 of them were by residents within the Eastern District of Pennsylvania. (*Id.*) This equates to an overwhelming majority of 69.35% of Pennsylvania purchasers within the Eastern District. (*Id.*)

[58] *See Willyoung v. Colorado Custom Hardware, Inc.*, No. 08-17, 2009 WL 3183061, *12 (W.D. Pa. Sept. 30, 2009) (finding 211 sales to Pennsylvania residents sufficient contacts).

[59] *Zippo*, 952 F. Supp at 1126.

[60] *Id.* at 1126-27 ("If [defendant] had not wanted to be amenable to jurisdiction in Pennsylvania, the solution would have been simple—it could have chosen not to sell its services to Pennsylvania residents.")

[61] *See R.Q.C. Ltd.*, 2014 WL 4792148, at *6; *Willyoung*, 2009 WL 3183061, at *13.

[62] *Miller Yacht Sales*, 384 F.3d at 97 (alteration in original) (citation omitted).

[63] *Burger King*, 471 U.S. at 477.

[64] *O'Connor*, 496 F.3d at 324 (quoting *Burger King*, 471 U.S. at 477).

[65] (ECF Doc. No. 9, at 8.)

[66] (*Id.*)

[67] (*Id.*)

[68] (*Id.*)

[69] *General Elec. Co. v. Deutz AG*, 270 F.3d 144, 150 (3d Cir. 2001) (citation omitted).

[70] *O'Connor*, 496 F.3d at 325.

[71] *Skidmore v. Led Zeppelin*, —F. Supp. 3d —, 2015 WL 2116632, *2 (E.D. Pa. May 6, 2015).

[72] *Blackburn v. Walker Oriental Rug Galleries, Inc.*, 999 F. Supp. 636, 638 (E.D. Pa. 1998).

[73] (ECF Doc. No. 24-1, Exs. 2-4.)

[74] (*Id.*)

[75] *EEOC v. Univ. of Pennsylvania*, 850 F.2d 969, 971 (3d Cir. 1988) (quoting *Crosley Corp. v. Hazeltine Corp.*, 122 F.2d 925, 929 (3d Cir. 1941)).

[76] *Id.*

[77] *Id.* at 972.

[78] (ECF Doc. No 24, at 17.)

[79] (*Id.* at 18-19.)

[80] The parties do not dispute the California Action is the first-filed action.  It does not matter Tatro filed in California state court initially and the removal did not occur until after LSAC filed this action.  *See Igloo Prods. Corp. v. The Mounties, Inc.*, 735 F. Supp. 214, 217 (S.D. Tex. 1990) (finding federal court's jurisdiction relates back to the state court acquired jurisdiction); *see also PhotoMedex, Inc. v. St. Paul Fire & Marine Ins. Co.*, No. 09-896, 2009 WL 2326750,

*4 n.5 (E.D. Pa. July 29, 2009) (noting sound policy reasons for using date of state court complaint for first-filed status). (*Id.* at 19-20.)

[81] *See Palagano v. NVIDIA Corp.*, no. 15-1248, 2015 WL 5025469, *2 (E.D. Pa. Aug. 25, 2015).

[82] *Id.* (citing cases subscribing to this approach).

[83] 500 F.3d 322 (3d Cir. 2007).

[84] 500 F.3d at 333 n.6.

[85] *Palagano*, 2015 WL 5025469, at *3; *Synthes, Inc. v. Knapp*, 978 F. Supp. 2d 450, 456 (E.D. Pa. 2013).

[86] *See Palagano*, 2015 WL 5025469, at *2; *Synthes*, 978 F. Supp. 2d at 456-57; *QVC, Inc. v. Patiomats.com, LLC*, No. 12-3168, 2012 WL 3155471, *3 (E.D. Pa. Aug. 3, 2012); *Villari Brandes & Kline, P.C. v. Plainfield Specialty*, No. 09-2552, 2009 WL 1845236, *6 (E.D. Pa. June 26, 2009).

[87] *Synthes*, 978 F. Supp. at 457.

[88] *Id.*

[89] *Id.* at 457 (citing *Villari*, 2009 WL 1845236, at *6).

[90] Fed.R.Civ.P. 1

[91] *EEOC*, 775 F.2d at 972-73.

[92] (ECF Doc. No. 24, at 18.)

[93] (ECF Doc. No. 24-1, Ex. 12, at ¶¶ 1, 10, & 19.)

[94] (ECF Doc. No. 24, at 18 (quoting *PhotoMedex*, 2009 WL 2326750, at *6)).

[95] 379 F. Supp. 2d 773, 735 (E.D. Pa. 2005).

[96] *Id.*

[97] *Id.* at 736.

[98] *Id.* at 736.

[99] *Id.* at 744 (citing *Drugstore-Direct, Inc. v. The Cartier Div. of Richemont North America, Inc.*, 350 F. Supp. 2d 620 (E.D. Pa. 2004)).

[100] *Id.* at 747.

[101] No. 05-6610, 2006 WL 2524228, *3 (E.D. Pa. Aug. 30, 2006).

[102] *Id.* at  *1.

[103] *Id.*

[104] *Id.* at *2.

[105] *Id.*

[106] *Id.*

[107] *Id.* at *3.

[108] *See FMC*, 379 F. Supp. 2d at 744.

[109] *See PPL Energy*, 2006 WL 2524228, at *3.

[110] *Keating Fibre Intern., Inc. v. Weyerhauser Co., Inc.*, 416 F. Supp. 2d 1048, 1052 (E.D. Pa. 2006)(citation omitted) (emphasis in original).

[111] *Id.* at 1050.

[112] *Id.*

[113] *Id.*

[114] *Id.*

[115] *Id.* at 1051-52.

[116] *Id.* at 1052.

[117] *Id.*

[118] *Id.; see also Synthes*, 978 F. Supp. 2d at 458 (applying first-filed rule where litigant chose a convenient forum); *D&L Dist., LLC v. Agxplore Intern., LLC*, 959 F. Supp. 2d 757, 771 (E.D. Pa. 2013) (finding litigating in "familiar forum" does not establish bad faith); *IMS Health, Inc. v. Vality Tech. Inc.*,  59 F. Supp. 2d 454, 464 (E.D. Pa. 1999) (applying first-filed rule where company was headquartered in first-filed district).

[119] LSAC contends the declaratory nature of the California Action is further evidence of an anticipatory filing. (ECF Doc. No. 24, at 17.) The court in *IMS Health* persuasively reasoned the filing of a declaratory judgment action is not itself evidence of bad faith:

> The purpose of the Declaratory Judgment Act is to enable a person caught in controversy to obtain resolution of the dispute, instead of being forced to await the initiative of the antagonist. In many cases, the declaratory defendant is prepared to, and does, file its own affirmative suit shortly afterwards. Therefore, a district court cannot dismiss a proper declaratory action merely because affirmative infringement litigation is subsequently brought elsewhere.

59 F. Supp. 2d at 463 (internal citations omitted). *IMS Health*, 59 F. Supp. 2d at 464; *see also Koresko v. Nationwide Life Ins. Co.*, 403 F. Supp. 2d 394, 403 (E.D. Pa. 2005) (finding threat of litigation insufficient to support finding of bad faith).

[120] *See Synthes*, 978 F. Supp. 2d at 458.

[121] *Sinclair Cattle Co. v. Ward*, 80 F. Supp. 3d 553, 563 (M.D. Pa. 2015).

[122] *Id.* (citing *EEOC*, 850 F.2d at 976).

[123] (ECF Doc. No. 24, at 16; ECF Doc. No. 30.)

[124] (ECF Doc. No. 13)

[125] (*Id.*)

[126] *Koresko*, 403 F. Supp. 2d at 403.

[127] *Id.*

[128] *Id.*

[129] *Villari*, 2009 WL 1845236, at *5.

[130] *Id.*; *see also Koresko*, 403 F. Supp. 2d at 400 (pending action in the transferee forum weighed heavily in favor of transfer despite presence of forum selection clause).

[131] *TriState HVAC Equip., LLP v. Big Belly Solar, Inc.*, 752 F. Supp. 2d 517, 539 (E.D. Pa. 2010) (citation omitted).